**Spence Law Office, P.C.**
Robert J. Spence, Esq. (RS3506)
Attorneys for the Debtors and
Debtors-in-Possession
55 Lumber Road, Suite 5
Roslyn, New York 11576
Tel.: (516) 336-2060

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

In re:                                                                      Chapter 11

JVK Operations Limited, et al.,                            Case No.: 24-70799 REG

　　　　　　　　　　　Debtors.[1]            (Jointly Administered)

------------------------------------------------------------------ x

## NOTICE OF FILING OF _SECOND AMENDED_ PLAN SUPPLEMENT IN CONNECTION WITH AND IN SUPPORT OF THE DEBTOR JVK OPERATIONS LIMITED MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

PLEASE TAKE NOTICE that, on October 31, 2025, JVK Operations Limited (the "Debtor") filed _The Debtor's Modified Third Amended Chapter 11 Plan Of Reorganization_ (ECF Doc. No. 262) (including all exhibits thereto and as further amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[1] with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") pursuant to section 1129, of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

PLEASE TAKE FURTHER NOTICE that, the Debtor hereby submits this _second_ amended plan supplement (as amended, modified or supplemented from time to time, the "Plan Supplement"), consisting of the following documents, each as may be amended, modified, or supplemented from time to time by the Debtor in accordance with the Plan as set forth below:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

<u>Exhibit</u>          <u>**Plan Supplement Document**</u>:

A.      Assumed or Rejected Executory Contracts unexpired Leases[2]

B.      List of Retained Causes of Action;

C.      ***Signed*** Settlement Agreement between Debtor and FLSA plaintiffs and claimants.[3]

D.      The expected amount due Dime Secured NY Claims as of the Effective Date

E.      Expected Post-Effective Date details of employment of officers and insiders

F.      Reorganization/Effective Date Notice

G.      Revised Agreement Between the Debtor and NatGrid to replace existing Exhibit B of the Plan.

H.      Notice of Proposed Amendments to the Plan (inclusion of Class 9a (First Citizens Bank,[4] and revised timing of the Reorganized Debtor Governance Documents).

PLEASE TAKE FURTHER NOTICE, that, subject to the terms and conditions of the Plan, the Debtor reserves all rights to amend, revise, or supplement this Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided by the Plan or by Order of the Bankruptcy Court.

Dated: Roslyn, New York
         January 12, 2026

Respectfully submitted,
SPENCE LAW OFFICE, P.C.
*Counsel to the Debtors*
By:      /s/ Robert J. Spence
         Robert J. Spence, Esq.
         55 Lumber Road, Suite 5
         Roslyn,  New  York  11576
         Tel.: (516) 336-2060

---

[2] Customer names are redacted.

[3] This unsigned settlement document is filed by agreement so that the Court and creditors are aware of the pending settlement and the terms thereof. The Debtor expects that the signed settlement, in substantially the same form as attached, will be filed with the Court in advance of the Confirmation Hearing.

[4] Class 9a is not in Article III of the Plan but was disclosed in the JVK-MediServ Settlement attached as Exhibit A to the Plan.

EXHIBIT A

## **Schedule of Executory Contracts and Leases to Be Assumed or Rejected**

| **JVK Contracts/Leases to Assume In Existence as of 3/1/2024** | | **Cure Amount** |
|---|---|---|
| Penske | Renewal Contract for truck rental | $2,500 (approx..) |
| CPP | Printer lease co. | ---------- |
| Eagle Feather | Lease of 130 New Highway | $40,000 (appox.) |
| LinenMaster | Linen software | ---------- |
| PestPro | Exterminator | [TBD] |
| State Farm | Auto Insurance | ----------- |
| Hubco Insurance | Commercial Insurance Policies | ----------- |

| **Customer Contracts to Assume In Existence as of 3/1/2024** | | **Cure Amount** |
|---|---|---|
| ██████ | Customer Contract(s) | ------------ |
| ████████████ | Customer Contract(s) | ------------ |
| ████████ | Customer Contract(s) | ------------ |
| ██████████ | Customer Contract(s) | ------------ |

| **JVK Contracts/Leases to Reject In Existence as of 3/1/2024** | | **Cure Amount** |
|---|---|---|
| CTL ("10")[1] | trailer rental | ------------ |

---

[1] Debtor disputes the effectiveness of this contract/lease, previously rejected this lease and and have requested that the trailers be picked up by CTL. Debtor reserves all claims against CTL.

EXHIBIT B

## **SCHEDULE OF RETAINED CAUSES OF ACTION**

This schedule represents a non-exhaustive list of the Retained Causes of Action in connection with the Plan (subject to the terms thereof). The Debtor expressly reserves the right to alter, modify, amend, remove, augment, or supplement this Schedule of Retained Causes of Action at any time in accordance with the Plan.

For purposes of Article I, of the Plan, notice is hereby given that "Retained Causes of Action" means certain Causes of Action owned and/or belonging to the Debtor that are not waived, relinquished, exculpated, released, compromised, transferred, or settled pursuant to the Plan or a Final Order of the Bankruptcy Court, as included in the Plan Supplement and as same may be amended, modified, or supplemented from time to time by the Debtor; provided, that Retained Causes of Action shall include Avoidance Actions and shall not include any Causes of Action against any Released Party.

1.   All Avoidance Actions, including, without limitation, to recover any transfer set forth in JVK Operations Limited's Statement of Financial Affairs [ECF39]. "Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections  502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

2.   All Causes of Action against Enterprise Leasing Co. of Philadelphia, LLC ("Enterprise") and any affiliates, subsidiaries, or parties related to Enterprise including, without limitation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the automatic stay.

3.   All Causes of Action against Purity Plus Laundry, any affiliates, subsidiaries, or parties related to Purity including, without limitation,  breach of contract, breach of the implied covenant of good faith and fair dealing, and failure to pay for services.

4.   All Causes of Action against any Person or Entity not released under the Plan.

5.   Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to seek to re-classify any Allowed Claim in accordance with any contractual, legal or equitable subordination relating thereto.

6.   All Causes of Action against any Person or Entity related to any act or omission that is determined in a final order to have constituted fraud, willful misconduct, or gross negligence.

7.      The right to seek a determination by the Bankruptcy Court of any tax, fine, or penalty relating to a tax or any addition to a tax, under section 505 of the Bankruptcy Code.

8.      All other Causes of Action arising in contract or tort or under a statute, including but not limited to Claims or Causes of Action arising from or related to (a) guarantees, indemnities, recoupment, or setoff; (b) failure to fully perform or to condition performance on additional requirements under contracts with the Debtor before the assumption or rejection, if applicable, of such contracts; (c) payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor or other party; and (d) counter-claims and defenses related to any contractual obligations.

Notwithstanding anything to the contrary herein, Retained Causes of Action shall not include any Causes of Action against any Released Party that are released by the Plan or other final settlement approved by the Bankruptcy Court.

Pursuant to the Plan, the Debtor, or the Reorganized Debtor, as applicable, may assert, pursue, litigate, investigate, prosecute, and/or compromise and settle the Retained Causes of Action, without further approval of the Bankruptcy Court or any other body.

No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement (including this Schedule of Retained Causes of Action), to any Retained Causes of Action against it as any indication that the Debtor or Reorganized Debtor will not, or may not, pursue any and all available Retained Causes of Action against it. The Debtor and Reorganized Debtor, expressly reserve all rights to prosecute any and all and all Retained Causes of Action against any Person or Entity.

Unless any Retained Causes of Action against any Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor and Reorganized Debtor expressly reserve all Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Causes of Action upon, after, or as consequence of, confirmation or consummation of the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Cause of Action that the Debtor, or the Reorganized Debtor, as applicable, may hold against any Person or Entity shall vest in the Debtor and Reorganized Debtor.

Notwithstanding any of the foregoing, the Debtor and Reorganized Debtor expressly reserve all rights to raise any defenses, including, but not limited to, those related to setoff or other offsets in connection with filed proofs of claim under applicable law, including, but not limited to, section 502(d) of the Bankruptcy Code.

EXHIBIT C

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs Kenia Montiel-Flores and Almanelly Rivera Zuniga ("Named Plaintiffs"), individually and on behalf all members of the "Settlement Class," (as hereinafter defined, and, with the Named Plaintiffs, also referred to herein as "Plaintiffs"), and Defendants JVK Operations Limited ("JVK Operations") and Vinod Samuel ("Samuel") (collectively, "Defendants" and together with Plaintiffs, individually each a "Party," and collectively the "Parties").

## RECITALS

A.    **WHEREAS,** Named Plaintiffs filed, on behalf of themselves and others similarly situated, a Collective Action Complaint against Defendants on May 21, 2019, and an Amended Class and Collective Action Complaint on or about November 23, 2021, asserting class claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a) *et seq.* ("NJWHL"), the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"), and the New Jersey Wage Theft Act ("NJWTA"), seeking recovery for unpaid wages, liquidated and statutory damages, interest and attorneys' fees, among other things, which is now pending in the United States District Court for the Eastern District of New York, Civil Action No. 19-cv-3005 (JS) (SIL) (the "Action").

B.    **WHEREAS,** on December 7, 2021, Defendants filed an Answer to the Amended Complaint denying Named Plaintiffs' claims in their entirety.

C.    **WHEREAS,** Defendants have defended and intend to vigorously contest each and every claim in the Action and deny all material allegations of the Action, as to which Defendants allege numerous meritorious defenses. Defendants, without admitting any wrongdoing or liability on their behalf, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Action against Defendants.

D.    **WHEREAS,** Class Counsel (as hereinafter defined) has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiffs and the Settlement Class. Based upon their analysis and evaluation of a number of factors, Named Plaintiffs and Class Counsel recognize the risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years. Named Plaintiffs and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of Named Plaintiffs and the Settlement Class.

E.    **WHEREAS,** the Parties, by and through their respective counsel, have engaged in significant and lengthy settlement discussions in connection with the resolution of the Action,

1

including at a mediation session with Ira Cure, Esq. on September 11, 2020, and at a mediation session with Martin Scheinman Esq. on December 1, 2023.

F.    **WHEREAS,** JVK Operating filed its petition for Chapter 11 bankruptcy, *In re JVK Operations Limited, et al., Case* No. 24-70799, in the U.S. Bankruptcy Court for the Eastern District of New York on March 1, 2024. The Parties – subject to the approval of this Court and the Bankruptcy Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

**NOW THEREFORE,** in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the receipt and sufficiency of which is hereby acknowledged, the Parties, having been represented by counsel and intending to be legally bound, hereby agree as follows:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **"Action" or "Litigation."** The Action or Litigation shall mean the lawsuit pending in the United States District Court for the Eastern District of New York, bearing the caption *Kenia Montiel-Flores and Almanelly Rivera Zuniga, individual and on behalf of all others similarly situated v. JVK Operations and Vinod Samuel*, Case No. 19-CV-3005 (JS) (SIL).

1.2    **"Administrator" or "Claims Administrator."** The Administrator or Claims Administrator refers to Angeion Group, a third-party administrator responsible for disseminating the Notices and administering the Settlement.

1.3    **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.4    **Application for Final Approval.** "Application for Final Approval" shall have the meaning set forth in Section 2.8 hereof.

1.5    **Authorized Claimant.** "Authorized Claimant" means each Class Member, or the authorized legal representative of such Class Member, who timely files a Claim Form in accordance with the terms of this Agreement, and who is therefore entitled to receive a Settlement Check.

1.6    **Bar Date.** "Bar Date" means the date by which any Class Member who wishes to qualify as an Authorized Claimant must file a Claim Form. Subject to the Court's approval and the provisions of Section 2.3, the Bar Date shall be no later than sixty (60) days after the initial mailing of the Notice, as defined herein, by the Settlement Claims Administrator (as defined herein).

1.7    **Claim Form.** "Claim Form" means the form, a copy of which is attached to the Notice of Settlement of Class Action Lawsuit, that Class Members must complete, sign, and return on or before the Bar Date. The Claim Form must be received by the Settlement Claims Administrator for a Class Member to be eligible to receive a Settlement Check.

**1.8**    **Class and Class Member.** "Class" (collectively) and/or "Class Member" (individually) means: all individuals employed by JVK Operations as non-managerial hourly employees at any time during the period of May 21, 2013, to and including the date the Court enters the Preliminary Approval Order, whose information was provided by Defendants in the Class List.

**1.9**    **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means Frank R. Schirripa Esq. and John A. Blyth, Esq. of Hach Rose Schirripa & Cheverie, LLP, 112 Madison Avenue, 10th Floor, New York, New York 10016 and Kenneth Katz, Esq. and Adam Joseph Sackowitz, Esq. of Katz Melinger PLLC, 370 Lexington Avenue, Suite 1512, New York, New York 10017.

**1.10**    **Class List.** "Class List" means a list in electronic format, preferably Microsoft Excel, that includes (to the extent known to Defendants) the names, last known addresses, social security numbers, last known telephone numbers, last known email addresses, and total weeks worked during the Settlement Period (as defined herein), which contains approximately 2,000 individuals as previously provided to Class Counsel. Class Counsel agrees not to use this information for any purpose other than to effectuate the terms of this Agreement. Class Counsel shall take all reasonable steps to maintain the confidentiality of the Class List including not divulging the information contained in the Class List to Named Plaintiffs or Class Members, and to destroy this information within thirty (30) days of the Final Effective Date, as defined below. Defendants shall use all reasonable efforts to produce a complete Class List.

**1.11**    **Costs and Fees.** "Costs and Fees" means, collectively, Class Counsel's attorney's fees, costs, and expenses; and the costs and fees associated with the Settlement Claims Administrator.

**1.12**    **Court.** "Court" means the United States District Court for the Eastern District of New York and/or the Bankruptcy Court for the Eastern District of New York, as applicable.

**1.13**    **Days.** "Days" means calendar days unless otherwise specified in this Agreement. To the extent a deadline falls on a weekend or holiday, that deadline shall be deemed to occur on the business day immediately following.

**1.14**    **Defendants.** "Defendants" means JVK Operations Limited and Vinod Samuel, collectively.

**1.15**    **Defendants' Counsel.** "Defendants' Counsel" means Douglas E. Rowe, Esq. at Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, East Meadow, New York 11554.

**1.16**    **Employment Taxes.** "Employment Taxes" means (1) all taxes an employer is required to pay arising out of or based upon the payment of employment compensation, including FICA, FUTA, and SUTA obligations, and (2) all ordinary and regular taxes required to be withheld from an employee's compensation or other income.

**1.17**    **Fairness Hearing.** "Fairness Hearing" means any hearing scheduled at the Court's discretion in connection with the Application for Final Approval of the Agreement.

**1.18    Final Effective Date.** Provided no appeal is timely filed, and no application has been made for reconsideration or rehearing, and all of the conditions for the Settlement Effective Date have occurred, the "Final Effective Date" means thirty (30) days after the Court has entered the Final Order. If such an appeal or application for reconsideration or rehearing is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired and no such petition for review has been filed; and/or (4) if a petition for review of an appellate decision affirming the Final Order is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form entered by the Court.

**1.19    Final Order.** "Final Order" means the Order entered by the Court after the completion of the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Awards, approving distribution of Costs and Fees, and dismissing the Action with prejudice.

**1.20    Final Settlement Amount.** "Final Settlement Amount" means the sum of all monies claimed from the Net Settlement Amount, which shall be inclusive of any and all Employment Taxes to be assessed on payments to Class Members, plus all Court-approved Costs and Fees and Service Awards.

**1.21    Gross Settlement Amount.** "Gross Settlement Amount" means Two Million Four Hundred Thousand Dollars ($2,400,000.00), an amount to be used for allocation and calculation purposes, that represents the maximum amount that Defendants agree to pay for complete and final resolution of the Action.

**1.22    Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each Authorized Claimant prior to any deductions for taxes required to be withheld from employee compensation or other income, and without the inclusion of Service Awards, if applicable.

**1.23    Individual Net Amount.** "Individual Net Amount" means the amount paid to each Authorized Claimant after deduction for taxes required to be withheld from employee compensation or other income.

**1.24    Named Plaintiffs.** "Named Plaintiffs" means Kenia Montiel-Flores and Almanelly Rivera Zuniga, collectively.

**1.25    Net Settlement Amount.** "Net Settlement Amount" means the aggregate balance to be allocated to all Authorized Claimants after the deduction of Costs and Fees, Service Awards and Employment Taxes.

**1.26    Notice(s).** "Notice(s)" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

4

**1.27**  **Objector.** "Objector" means an individual Authorized Claimant who timely and properly files an objection to this Agreement.

**1.28**  **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means those individuals who filed a consent to join form in this Action pursuant to § 216(b) of the Fair Labor Standards Act.

**1.29**  **Opt-out Statement.** "Opt-out Statement" means the written, signed statement that an individual Class Member or that individual's authorized representative uses to exclude himself or herself ("Opt-out") from the settlement and from the Class. Any Class Member who does not timely (pursuant to Section 2.5 below) submit an Opt-out Statement waives and releases all State Law Claims, even if he or she does not submit a claim form. Class Members who submit an Opt-out Statement retain their FLSA Claims and/or State Law Claims.

**1.30**  **Preliminary Approval Motion.** "Preliminary Approval Motion" shall have the meaning set forth in Section 2.2 hereof.

**1.31**  **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; (ii) directing the manner and timing of providing Notice to the Class Members; (iii) setting the dates and deadlines for effectuating the settlement, including the date of the mailing of Notice, Bar Date Deadline, and the date of the Fairness Hearing if one is to be scheduled.

**1.32**  **Qualified Settlement Fund.** "Qualified Settlement Fund (or "QSF")" means the account established and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Final Settlement Amount in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Preliminary Approval Order, and the Final Order, as well as any other or further Orders of this Court. Interest, if any, earned in the QSF will become part of the Net Settlement Amount to be distributed to the Authorized Claimants.

**1.33**  **Release.** "Release" shall mean the release of claims, as specified herein, to which the Parties bind themselves.

**1.34**  **Released Class Claims.** "Released Class Claims" means any and all compensation or wage-related claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters and issues arising in any way during the period from May 21, 2013 to the date that the Court enters the Preliminary Approval Order, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, against Released Entities and that arise out of, relate to, or concern the payment of compensation or wages, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, contractual or common law claims for unpaid regular or overtime wages, earned sick time, accrued benefit time, prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living

wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release includes any such claims under the NYLL, NJWHL, NJWPL NJWTA and any other state or local law statute, rule, regulation, or ordinance governing compensation and/or the payment of wages, but not under the FLSA. For the avoidance of doubt, this settlement is in full and complete satisfaction of the proof of claim no. 25-1 against JVK Operations Limited Nos. (Case No. 24-70799),filed by the Settlement Class in the Bankruptcy Court on June 13, 2024.

1.35   **Released Authorized Claimant Claims.** "Released Authorized Claimant Claims" means any and all compensation or wage-related claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising in any way during the period from May 21, 2013, to the date that the Court enters the Preliminary Approval Order, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal any other forum or proceeding, against Released Entities and that arise out of, relate to, or concern the payment of compensation or wages, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, contractual, or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, earned sick time, accrued benefit time, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release also includes any such claims under the NYLL, NJWHL, NJWPL NJWTA and FLSA, as well as any other state or local law, statute, rule, regulation, or ordinance governing the payment of wages

1.36   **Released Entities.** "Released Entities" means Defendants and their respective estates, heirs, executors, administrators, agents, successors, and assigns, as well as their individual and collective subsidiaries, parents, affiliates, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), creditors, insurers, reinsurers, sureties, predecessors, and successors of the foregoing, as well as the officers, managers, owners, employee benefit plan administrators, owners, shareholders, fiduciaries, trustees, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them, in their individual and/or representative capacities, parent companies, subsidiaries, related or affiliated companies, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such.

1.37   **Service Awards.** "Service Awards" means the portion of the Final Settlement Amount, if any, requested by Named Plaintiffs and approved by the Court as a reasonable incentive award to Named Plaintiffs for representing the interests of the Class Members.

1.38   **Settlement Administrator's Fee.** "Settlement Administrator's Fee" means the Settlement Claims Administrator's professional service fees and costs.

**1.39    Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount and for the award of Service Award if said Authorized Claimant is also a Service Award Recipient.

**1.40    Settlement Period.** "Settlement Period" means May 21, 2013, through the Settlement Effective Date.

## 2.    Approval and Procedure

**2.1    Settlement Claims Administrator.**

(A)    **Retention.** Named Plaintiffs represent that, as of the signing of this Agreement, Class Counsel has engaged Angeion Group to act as the Settlement Claims Administrator.

(B)    **Funding Settlement Claims Administrator.** The Settlement Administrator's Fee shall be paid by Class Counsel.

(C)    **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to the Class Members the Notice and Claim Forms; (ii) performing a skip trace and resending, within one (1) day of receipt, any Notice and Claim Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (iv) monitoring and maintaining a telephone number for the purpose of responding to inquiries made by Class Members until the Final Effective Date or the termination of this Agreement, whichever comes first; (v) receiving, retaining, and reviewing each Claim Form submitted by any Class Member; (vi) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (vii) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections, or other written or electronic communications from each Class Member that the Settlement Claims Administrator receives; (viii) mailing Service Awards and/or Settlement Check in accordance with this Agreement and the Final Order; (ix) preparing, sending, and/or wire-transferring Class Counsel's attorney's fees, expenses, and costs; (x) paying all Employment Taxes, including issuing the W-2 and 1099 Forms for all amounts paid from the Final Settlement Amount; (xi) responding to inquiries of Class Members regarding procedures for filing objections, Opt-out Statements, and Claim Forms; (xii) referring to Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiii) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xiv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xv) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Claim Forms, returned mail, and any and all other actual or attempted written or electronic communications with the Class Members; (xvi) confirming in writing to

7

counsel for the Parties and the Court its completion of the administration of the settlement; (xvii) timely responding to communications from the Parties and their counsel; (xviii) providing all information, documents, and calculations necessary to confirm the Final Settlement Amount; and (xix) such other tasks as the Parties mutually agree.

(D)   **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendants' Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement.

## 2.2   Preliminary Approval Motion.

(A)   Within ten (10) days of the Settlement Effective Date, Class Counsel shall file a Motion for Preliminary Settlement Approval (the "Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice, (2) the proposed Claim Form, (3) the proposed Preliminary Approval Order, (4) an executed version of this Agreement, (5) the necessary documents, memorandum, affidavits, and exhibits for the purposes of approving the settlement.

(B)   In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to effectuate the settlement as contemplated herein and obtain a "Final Order", such that the Court may, among other things: (1) approve the settlement as fair, adequate, and reasonable; (2) incorporate the terms of the releases, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees and the Service Awards; and (5) authorize distribution and payment to the Authorized Claimants.

(C)   Class Counsel will file the Preliminary Approval Motion as "unopposed," provided that Class Counsel provides Defendants' Counsel with a copy of the Preliminary Approval Motion and all other documents referenced in Section 2.2(A) at least five (5) days before filing, along with an opportunity to comment, and Defendants' Counsel consents to same. Defendants agree that they will not withhold consent so long as the Preliminary Approval Motion and all other documents referenced in Section 2.2(A) are consistent with the terms and conditions of this Agreement.

## 2.3   Notice and Claim Forms to Class Members.

(A)   **Class Action Fairness Act Notice.** Within ten (10) days of the filing of the Preliminary Approval Motion, Defendants' Counsel shall issue any notice required by the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715(b).

(B)   **Class List.** Within ten (10) days of the entry of the Preliminary Approval Order by the Court, Defendants shall provide the Settlement Claims Administrator and Class Counsel with the Class List.

(C) **Notice.** The Notice, to be provided in both English and Spanish, will inform the Class Members about this settlement, including the language of the release, and will also advise each Class Member of his or her rights, including his or her ability to object to, opt-out of, or participate in the settlement. Within twenty (20) days of the entry of the Preliminary Approval Order, or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to each Class Member via First Class Mail the Court-approved Notice and Claim Forms, and any required tax-related forms.

(D) **Skip Trace and Remailing.** If a Claim Form is returned as undeliverable, the Settlement Claims Administrator shall conduct one skip trace, and shall re-mail the Claim Form to such address. The Settlement Claims Administrator shall re-mail only once a Notice and Claim Form to any Class Member who requests them after the initial mailing of Notice and before the Bar Date. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notices and Claim Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be paid from the QSF.

(E) **Bar Date.** To be deemed an Authorized Claimant, a Class Member must postmark, email, or fax a signed Claim Form to the Settlement Claims Administrator by the Bar Date, which shall be (i) sixty (60) days from the date the Claims Administrator post-marks the Notice and Claim Form or as otherwise set by the Court, and (ii) an additional fifteen (15) days later for any Class Member who did not receive the Notice, or was unable to file a timely Claim Form, due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances. If an envelope does not contain a postmark, it shall be deemed received on the date that the Settlement Claims Administrator stamps the envelope or Claim Form as "received."

**2.4    Access to Class Member Information.**

(A) **Calculated Individual Gross Amounts.** Within fourteen (14) days of its receipt of the Class List, the Settlement Claims Administrator shall provide Class counsel and Defendants' Counsel with a spreadsheet, in Microsoft Excel Format, containing the anticipated Individual Gross Amounts for each Class Member, which shall be calculated in a manner consistent with Section 3.5(A) of this Agreement.

**2.5    Opt-outs: Class Members who Opt-out of the Settlement.**

(A) Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement ("Opt-out Statement"). In order to be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and a statement indicating his or her intention to opt-out. To be effective, an Opt-out

Statement must be postmarked by the United States Postal Service on or before the Bar Date.

(B)   A Class Member's time to opt-out of the settlement ("Opt-out Period") shall expire at 12:01 AM the day after the Bar Date.

(C)   The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendants' Counsel not later than three (3) days after receipt. The Settlement Claims Administrator shall also file with the Clerk of the Court stamped copies of any Opt-out Statements not later than three (3) days after receipt. The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)   Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Order, and will have any Released Class Claims released and dismissed with prejudice as detailed in Section 1.34. Only those Class Members who timely complete and return a Claim Form postmarked or received by the Settlement Claims Administrator by the Bar Date will be deemed an Authorized Claimant. Defendants shall have no obligation to pay or fund any amounts allocated to any Class Member who does not submit a timely Claim Form as set forth in this Agreement.

**2.6   Objectors: Authorized Claimants who Object to the Settlement.**

(A)   Class Members who wish to present objections to the settlement must first do so in writing and properly file a valid Claim Form by the Bar Date. To be deemed a valid objection, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, email address, and telephone number of the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice and Claim Form mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection. If the Objector requests in writing to appear at a hearing with the Court to state his/her objection, Class Counsel shall promptly file the date-stamped Objection with the Court and request such a hearing. It is in the Court's discretion whether to schedule a hearing and allow the Objector or Objector's counsel to appear and/or speak at the hearing. If the Court schedules such a hearing, Class

Counsel shall notify the Objector via first class U.S. Mail of the date, time, and location of the hearing. The Parties may file with the Court written responses to any filed Objections no later than three (3) days before the hearing. Any reasons for the Objections not included in the written objection shall not be considered by the Court.

(B)     An Objector may withdraw his or her objections at any time. Any Class Member who has elected to opt-out of the settlement may not submit objections to the settlement. Such objections, if received by the Settlement Claims Administrator, will be disregarded.

## 2.7    List and Calculations.

(A)     No later than ten (10) days after the Bar Date, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendants' Counsel: (a) a list of all Authorized Claimants, (b) the Individual Gross Amounts for each Authorized Claimant as well as their aggregate total; (c) a list of all Objectors, and (d) a list of all Class Members who timely submitted an Opt-out Statement. Throughout the period of claims administration, the Settlement Claims Administrator shall provide reports to the Parties upon their request regarding (i) the status of the mailing of the Notices and Claim Forms to Class Members, (ii) the status or progress of the claims administration process, (iii) anticipated or expected distribution of the Settlement Checks, and (iv) any other aspect of the claims administration process. For any Opt-Outs, the Debtors will file an application for a supplemental bar date in the Bankruptcy Case and timely filed allowed claims of Opt-Outs in the Bankruptcy Case shall be treated in accordance with the class of general unsecured creditors.

(B)     No later than thirty (30) days after the Bar Date, the Settlement Claims Administrator shall provide notice by email to Class Counsel and Defendants' Counsel of the Final Settlement Amount, together with an Excel spreadsheet that designates each Authorized Claimant, his/her allocated share, and the appropriate totals and calculations to confirm the Final Settlement Amount, including the estimated Employer Taxes ("Notice of Final Settlement Amount").

## 2.8    Fairness Hearing and Application for Final Approval and Dismissal.

(A)     After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order, and in advance of the Fairness Hearing, Class Counsel shall file supporting documents for final approval by the Court of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a report from the Settlement Claims Administrator, an application for attorneys' fees (consistent with Section 3.3 of this Agreement), and supporting affirmations and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Order.

(B)     Class Counsel will provide a "Microsoft Word" version of the Application for Final

Approval, including the Memorandum of Law and Declaration in Support, to Defendants' Counsel at least five (5) days in advance of any deadline to file the same for review and comment and upon completion of such review, Class Counsel shall file the application with Defendants' consent. Defendants reserve the right to oppose such application, however, if it is inconsistent with the terms and conditions of this Agreement.

(C)     At the Fairness Hearing and through the Application for Final Approval, the Parties may request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted-out of the settlement and enjoin all Class Members who do not opt-out from pursuing and/or seeking to reopen claims that have been released by this Agreement; (2) order distribution of the Settlement Checks to the Authorized Claimants and any Service Awards as described in this Agreement; (3) order the costs and professional fees of Class Counsel to be paid, including the costs and fees incurred in the engagement of the Settlement Claims Administrator; (4) dismiss this Action with prejudice, and release the Released Class Claims and Released Authorized Claimant Claims, (5) enter a Final Order in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.9     Termination of Agreement; Effect of Termination.**    Termination of the Agreement shall have the following effects:

(A)     In the event this Agreement not consummated for any reason, including: (1) a termination under this Agreement; (2) a ruling by the Court declining to enter a Preliminary Approval Order or Final Order substantially in the form submitted by the Parties (including a reversal and/or modification on appeal of the Court's Preliminary Approval Order or Final Order); or (3) for any other reason not presently contemplated, then the Parties shall first endeavor to resolve the matter jointly and in good faith, including jointly or individually seeking reconsideration of the Court's ruling, if necessary, or involving Mediator Martin Scheinman, Esq. if practical. To the extent such good faith efforts fail, the Parties may continue to litigate the Action with all rights and defenses intact as if no agreement had occurred.

(B)     If the settlement is terminated, any amounts held in escrow or deposited into the QSF pursuant to Paragraph 3.1 below will be returned to the Party who deposited said funds, less the accrued administration fees of the Settlement Claims Administrator if the Notices were already distributed.

**3.     SETTLEMENT TERMS**

**3.1     Amount.** The Parties agree to a Qualified Settlement Fund in an amount not to exceed Two Million Four Hundred Thousand Dollars and Zero Cents ($2,400,000.00), which shall fully

resolve and satisfy any and all amounts to be paid to all Authorized Claimants, in accordance with the terms of this Agreement, for releasing claims, and any Court-approved Costs and Fees, Employment Taxes and Service Awards.

(A)     **Funding of the QSF from the Operations of JVK Operations.** JVK Operations shall fund the QSF with equal quarterly distributions from operations, which in the aggregate shall not exceed the lesser of one million one hundred thousand dollars ($1,100,000) or the Net Settlement Amount. In no event shall the JVK Operations payment to the QSF exceed $1,100,000. Payments to the QSF commence on the later of: (a) the date when the total amount of the payments due to the class are determined by the Settlement Claims Administrator as set forth in Section 2.7(B); or (b) within ten (10) days of the Final Effective Date. The quarterly distributions from the operations into the QSF shall be paid over the period of eight (8) years from the later of: (a) the date when the total amount of the payments due to the class are determined by the Settlement Claims Administrator as set forth in Section 2.7(B); (b) the one (1) year anniversary of the Plan Effective Date (as defined in the JVK Operations Plan of Reorganization), or (c) within ten (10) days of the Final Effective Date, however, JVK Operations has the option of accelerating its payments into the QSF.

(B)     **Additional Funding of QSF from Defendant Samuel.** Defendant Samuel shall be individually responsible for funding the QSF for any amounts over $1,100,000 and up to the remainder of the Final Settlement Amount to the extent that such payments in excess of $1,100,000 if applicable, are not made by JVK Operations . Defendant Samuel's obligation to fund the QSF, if necessary, shall commence the later of: (a) two (2) years from the Final Effective Date, or, (b) within 30 days of receipt of $1,100,000 from JVK Operations or an uncured default by JVK Operations . Defendant Samuel's contribution to the QSF shall be funded with equal quarterly payments paid over the period of three (3) years from the date of commencement of his payments, however, Defendant Samuel has the option in his discretion of accelerating his payments into the QSF, if feasible.

(C)     **Deduction of Employer and Employee Payroll Taxes.**

    (1)     All applicable employee-side Employment Taxes will be paid out of the QSF by the Settlement Claims Administrator. Defendants will provide the Settlement Claims Administrator such information as is necessary for the Settlement Claims Administrator to make proper employee tax withholdings, issue and file tax-related forms, and comply with all tax reporting obligations.

    (2)     The Settlement Claims Administrator shall calculate the appropriate and regular tax deductions from each Authorized Claimant's Individual Gross Amount (as calculated in accordance with Section 3.5) to determine the Individual Net Amount. The Individual Net Amount will be the amount reflected on the Settlement Checks. Any reduction reflected in the difference between the Individual Gross Amount and Individual Net

13

Amount will not affect the Final Settlement Amount or the Net Settlement Amount.

(3)   The Settlement Claims Administrator shall also calculate the employer-side Employment Taxes for Authorized Claimants, which are included in the Final Settlement Amount.

(D)   **Funding Default.** If Defendants fail to make any funding payment in accordance with Section 3.1 of this Agreement, Class Counsel shall provide Defendants' Counsel , with notice of the default by email. Defendants will then have fourteen (14) days from the date of receipt of such notice within which to cure the default by making the payment due and owing to the QSF. If Defendants timely cure their breach, no other dates in the above schedule shall become altered or in any way affected. If Defendants fail to timely cure their breach, The Final Settlement Amount less payments hereunder  will then become due and owing, and Named Plaintiffs may apply to the Court, which will retain jurisdiction over the Action to enforce the terms of this Agreement, to enter judgment against Defendants for that amount, plus reasonable attorneys' fees and costs associated with seeking judgment for Defendants' breach including costs and fees for any motion for costs and fees.

(E)   **Reversion.** If payments to the Authorized Claimants as described in Section 3.2 are not cashed within 180 days of the date of the checks, the checks will be null and void and the Settlement Claims Administrator shall put a stop payment on all checks not yet deposited. Any and all monies remaining in QSF more than two hundred forty (240) days after the mailing of the Settlement Checks shall revert to Defendants , as the case may be.

(F)   **No Blow-up.** Defendants shall not have the unilateral option to terminate this Agreement at its sole discretion based upon the number of Opt-Outs.

**3.2   Payments from the QSF.**

(A)   Within twenty-one (21) days after the Final Effective Date, the Settlement Claims Administrator shall (i) mail any Service Award equal to the approved amount, (iii) mail or wire-transfer proportionate payment to Class Counsel in the amount of Court-approved costs plus attorney's fees equal to the approved amount.

(B)   Within twenty-one (21) days after the QSF is fully funded, in accordance with Section 3.1, the Settlement Claims Administrator shall (i) mail all Settlement Checks to Authorized Claimants in an amount equal to their allocation, and (ii) pay all Employment Taxes to the appropriate government authorities due at such time. The Settlement Claims Administrator shall use reasonable efforts to make an additional mailing to Authorized Claimants whose checks are returned because of an incorrect address. Such efforts shall include using social security numbers to obtain better address information and attempting to call and email the Authorized Claimants.

**3.3**  **Amounts Payable as Attorney's Fees, Costs, and Expenses.**

(A)  In connection with the Application for Final Approval, Class Counsel will petition the Court for an award from the QSF of no more than 33⅓% of the Gross Settlement Amount, which is equivalent to Eight Hundred Thousand Dollars and Zero Cents ($800,000), as and for attorneys' fees, plus reimbursement for reasonable, actual costs and expenses actually incurred in connection with the Action, which amount includes the costs of the Settlement Claims Administrator, as set forth in Section 2.1(B). Defendants shall not oppose such application, as long as it is consistent with the terms herein, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)  The substance of Class Counsel's application for attorney's fees, expenses, and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of any proceeding related to Class Counsel's application for attorney's fees, expenses, and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)  Defendants shall fund the Court-approved Costs and Fees into the QSF in the manner described in Section 3.1.

**3.4**  **Service Awards to Named Plaintiffs.**

(A)  In return for services rendered to the Settlement Class, in the Application for Final Approval, Named Plaintiffs may each apply to the Court to receive a Service Award of no more than Five Thousand Dollars ($5,000) each.

(B)  The application for a Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of the Court's ruling on the application for a Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)  Defendants shall fund the Court-approved Service Awards into the QSF in the manner described in Section 3.1.

**3.5**  **Net Settlement Fund, Allocation to Class Members, and Calculation.**

(A)  **Calculation.** Each Authorized Claimant's Individual Gross Amount shall be calculated based on the number of weeks worked by each Authorized Claimants as follows:

(1)  Calculate the Net Settlement Amount by deducting the Costs and Fees, (inclusive of claims administration costs) and Service Awards from the Maximum Settlement Amount.

(2)  Each Class Member shall be assigned one (1) point for each week worked

15

between May 21, 2013 and December 1, 2023, based upon JVK Operations' employment records.

(3)     Add all points for each Class Member together to obtain the "Total Denominator."

(4)     Divide the number of points for each member of the Settlement Class by the Total Denominator to obtain each Class Member's allocated percentage of the class fund amount ("Percentage").

(5)     Multiply each Class Member's Percentage against the Net Settlement Amount to determine the Individual Gross Amount of each Class Member.

Once each Class Members' Individual Gross Amount is calculated in accordance with the provisions of this Section 3.5, the Individual Gross Amount shall not be increased unless: (a) the Net Settlement Amount equals less than Two Hundred Forty Thousand Dollars and Zero Cents ($240,000.00); (b) the Court approves Service Awards that totals less than Ten Thousand Dollars and Zero Cents ($10,000.00); and/or (c) the Court approves Costs and Fees that total less than Eight Hundred Thousand Dollars and Zero Cents ($800,000.00).

(B)     **Tax Treatment**. Fifty percent (50%) of each Authorized Claimant's Individual Gross Amount will be reported to the IRS as W2 wage income and Fifty percent (50%) of each Authorized Claimant's Individual Gross Amount will be reported to the IRS as 1099-Misc "Other Income" representing liquidated damages and interest. All Costs and Fees, including any Service Award, will be reported to the IRS as 1099-Misc "Other Income". By submitting a Claim Form, each Authorized Claimant (and Service Award Recipient, as applicable) agrees to defend and hold Defendants harmless, up to the amount of his or her Individual Gross Amount (and Service Awards, if applicable), for any unexpected tax obligations and related expenses that Defendants might incur because of this settlement and/or the failure of any Authorized Claimant (and Service Award Recipient, as applicable) to pay taxes on any income he or she might receive as a participant in the settlement. All Costs and Fees, payroll taxes, and Employment Taxes shall be paid from the QSF and are included in the Net Settlement Amount.

(C)     **Modification.** The parties may, in their discretion, modify Section 3.5 as necessary so as to ensure the intent of the parties in reaching the instant Agreement is honored. Any modification must comply with Section 5.11 of this Agreement. Any disputes under this section shall be submitted to Mediator Martin Scheinman Esq. for a binding determination.

## 3.6    Settlement Check Distribution.

(A)     The Settlement Claims Administrator shall be responsible for generating checks or wire transfers to pay Service Awards, the Individual Net Amounts to the Authorized Claimants, and the Costs and Fees (including the Settlement Administrator's Fee).

(B)    The Settlement Claims Administrator shall deliver all Individual Net Amounts to the Authorized Claimants by check via First Class Mail and Class Counsel's Costs and Fees via wire transfer.

**4. Release of Claims and Covenant Not to Sue.**

(A)    By operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, each individual Class Member who does not timely opt-out of this settlement pursuant to this Agreement, and each individual Authorized Claimant, on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents forever and fully releases and discharges the Released Entities from all Released Class Claims as defined in paragraph 1.34.

(B)    By operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, each individual Authorized Claimant on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents forever and fully releases and discharges the Released Entities from all Released Class Claims and Released Authorized Claimant Claims as defined in paragraphs 1.34 and 1.35.

(C)    Unless the Named Plaintiffs or Opt-in Plaintiffs opt-out of this settlement pursuant to the terms of this Agreement, then by operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, regardless of whether the Named Plaintiffs or Opt-in Plaintiffs timely submit a Claim Form, the Named Plaintiffs and Opt-in Plaintiffs forever and fully releases and discharges Released Entities from all Released Class Claims and Released Authorized Claimant Claims as defined in paragraphs 1.34, 1.35 and 1.36.

(D)    The Class Members and Authorized Claimants expressly acknowledge that: (i) the facts and perceived circumstances to which the Released Class Claims and Released Authorized Claimant Claims relate, may hereafter turn out to be other than, or different from the facts and perceived circumstances now known or believed to be known; (ii) the Class Members and Authorized Claimants expressly assume the risk referred to in "(i)" of this provision; and (iii) the Class Members, and Authorized Claimants agree that the Released Class Claims and Released Authorized Claimant Claims shall be in all respects effective in accordance with their terms and shall not be subject to termination or rescission by reason of such different facts or perceived circumstances.

(E)    **Named Plaintiffs.**

(1)    Named Plaintiffs understand that they have at least 21 days from the date they receive this Agreement and any attached information to consider the terms of this Agreement, including whether to sign this Agreement ("Consideration Period"). If they choose to sign this Agreement before the Consideration Period ends, they represents that it is because they freely

17

chose to do so after carefully considering its terms. The Named Plaintiffs agree that changes, whether material or immaterial, do not toll or restart the running of the Consideration Period. The Named Plaintiffs agree that Defendants have made no threats or promises to induce them to sign earlier. Named Plaintiffs shall have seven calendar days from the date that they sign this Agreement to revoke this Agreement by delivering a written notice of revocation to Douglas E. Rowe, Esq. at Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, East Meadow, New York 11554 ("Revocation Period"). If the Revocation Period expires on a weekend or holiday, the Named Plaintiffs will have until the end of the next business day to revoke.

(2)    Named Plaintiffs understand that this release does not apply to (i) claims for unemployment workers' compensation benefits; (ii) claims or rights that may arise after the date they sign this Agreement; (iii) any vested rights under ERISA-covered employee benefit plans as applicable on the date they sign this Agreement; and (iv) any claims that controlling law states cannot be released by this Court-approved Agreement. Moreover, Named Plaintiffs understand that nothing in this Agreement (i) limits or affects their right to challenge the validity of this Agreement under the ADEA or the OWBPA; (ii) prevents either party from communicating with, filing a charge or complaint with, providing documents or information voluntarily or in response to a subpoena or other information request to, or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, OSHA, law enforcement, or any other any federal, state or local agency charged with the enforcement of any laws, or from responding to a subpoena or discovery request in court litigation or arbitration; or (iii) precludes them from exercising their rights, if any, under Section 7 of the NLRA or under similar state law to engage in protected, concerted activity with other employees, including discussing her compensation or terms and conditions of employment.

(3)    By signing this Agreement, Named Plaintiffs are waiving their right to recover any individual relief (including any backpay, front pay, reinstatement, or other legal or equitable relief) in any charge, complaint, or lawsuit or other proceeding brought by them or on their behalf by any third party, except for any right they may have to receive a payment or award from a government agency (and not any party released by this Agreement) for information provided to the government agency or where otherwise prohibited.

**4.1    Settlement Payments Do Not Trigger Additional Benefits or Incentives.** All payments to Authorized Claimants shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Class Members. The Parties agree that the payments provided for in this Agreement are the sole payments to be made to the Class Members in connection with this Settlement or the Action, and that the Authorized Claimants are not entitled to any new or additional compensation, benefits or

incentives as a result of having received such payments, notwithstanding any contrary language or agreement in any benefit or compensation plan document that might currently be in effect or have been in effect during the period covered by this Settlement.

## 5.    INTERPRETATION AND ENFORCEMENT

5.1    **Non-Admission of Liability.** By entering this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiffs, Opt-in Plaintiffs, Authorized Claimants, and/or the Class Members, individually or collectively, all such liability being expressly denied. Rather, Defendants enter into this Agreement to avoid further protracted litigation, and to fully resolve and settle all disputes with the Named Plaintiffs, Opt-in Plaintiffs, Authorized Claimants, and Class Members. Settlement of the Action, negotiation, and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints or other papers filed by Named Plaintiffs in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, regulatory, governmental, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

5.2    **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such other and further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.3    **No Assignment.** Class Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

5.4    **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.5    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, Opt-in Plaintiffs, Authorized Claimants, and all Class Members, their families, representatives, heirs, administrators, executors, beneficiaries, conservators, insurers, attorneys, and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Named Plaintiffs, Opt-in Plaintiffs, Authorized Claimants, and all Class Members in the Action, this Agreement is binding.

**5.6**     **Survival.** The provisions of Sections 2.9 shall survive termination of this Agreement.

**5.7**     **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.8**     **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.9**     **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles.

**5.10**    **No Unilateral Petition.** The Parties may not unilaterally petition the Court to modify this Agreement, except to the extent provided in this Agreement.

**5.11**    **Waivers, Etc. To Be In Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval (Bankruptcy Court and/or EDNY). Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12**    **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective (the "Settlement Effective Date") upon the later to occur of (a) its full execution, or the day after the end of the Revocation Period (provided Named Plaintiffs do not revoke this Agreement), whichever is later, (b) the date the Order approving the Agreement becomes final and non-appealable, (c) the date the Order confirming the JVK Operations Plan of Reorganization becomes final and non-appealable, and (d) the Plan Effective Date (as defined in the JVK Operations chapter 11 Plan). The Settlement Effective Date shall not be confused with the "Final Effective Date," which is a separately defined term. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13**    **Digital and Email Signatures.** Any Party may execute this Agreement by digitally or physically signing on the designated signature block below and transmitting that signature page via email to counsel for the other Party. Any signature made and transmitted by email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile email.

**5.14   Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**5.15   Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or enforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.16   Binding Authority of Counsel.** Counsel hereby represent that they are fully authorized to bind the parties they represent to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

**5.17   Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.18   Effectiveness/Approval.** Approval of this Agreement is being sought in connection with confirmation of the JVK Operations Plan of Reorgaization. Confirmation of the Plan and occurrence of the Plan Effective Date (as defined in the Plan) are condition to approval of this Agreement.

**Hach Rose Schirripa & Cheverie LLP**
**and Katz Melinger PLLC**
**For Plaintiffs**

By: _____

Dated: _____12/17/2025_____

**Spence Law Office, P.C.**
**For Defendant JVK Operations Limited**

By: _____

Dated: _____1/12/26_____

**Certilman Balin Adler & Hyman, LLP**
**For Defendant Vinod Samuel**

By: _____Daung Reeve_____

Dated: _____12/17/25_____

21

EXHIBIT D

**SCHEDULE OF THE EXPECTED AMOUNT DUE DIME SECURED
NY CLAIMS AS OF THE EFFECTIVE DATE**

Dime Loan Number:xxxxxxx009

Estimated Principal Due on Effective Date:　　　$310,273.61

Dime Loan Number: xxxxxxx003

Estimated Principal Due on Effective Date:　　　<u>$831,260.60</u>

Total Expected Balance on Effective Date:　$1,141,636.32*

*Does not include attorneys fees, costs, expenses. Expected balances based on payoff balance from Dime of $889,260.60 for loan ending 003 and $322,273.61 for loan ending 009 for a total of $1,211,533 as of February 3, 2025, and expected payments of approximately $180,000 in adequate protection payments since February 3, 2025 as of the expected Effective Date.

EXHIBIT E

**SCHEDULE OF EXPECTED POST-EFFECTIVE DATE
DETAILS OF EMPLOYMENT OF OFFICERS AND INSIDERS**

| Officer | Salary |
| --- | --- |
| Blaise Vas, Chief Executive Officer | $125,000 |
| Joseph Samuel, Chief Operating Officer. | $104,000 |

| Other Insiders | Salary |
| --- | --- |
| Vinod Samuel, Consultant | TBD |
| Michael Connell, Consultant | TBD |

EXHIBIT F

**Spence Law Office, P.C.**
Robert J. Spence, Esq. (RS3506)
Attorneys for the Debtors and
Debtors-in-Possession
55 Lumber Road, Suite 5
Roslyn, New York 11576
Tel.: (516) 336-2060

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
In re:                                                    Chapter 11

JVK Operations Limited, et al.,               Case No.: 24-70799 SPG

                                Debtors.[1]          (Jointly Administered)

------------------------------------------------------------------ x

**NOTICE OF (1) ENTRY OF ORDER CONFIRMING PLAN, (2) OCCURRENCE OF EFFECTIVE DATE OF CONFIRMED PLAN AND (3) CERTAIN DEADLINES UNDER THE PLAN**

  **PLEASE TAKE NOTICE,** that the attached Order was entered by the Bankruptcy Court

in the above-captioned case on _____, 2025 (ECF \_\_\_\_) (the "Confirmation Order"),

approving the Debtor's *Modified Third Amended Chapter 11 Plan of Reorganization* [ECF Doc.

No. 262] (the "Plan").[1]

  **PLEASE TAKE FURTHER NOTICE** that on _____, 202\_\_, the Effective

Date occurred with respect to the Plan.

  **PLEASE TAKE FURTHER NOTICE,** that the Plan contains deadlines for filing certain

types of claims, to wit: any proofs of claim or applications for the payment of administrative claims

arising after March 1, 2024 and prior to the Effective Date must be filed with the Court and served

on the undersigned no later than _____, 202\_\_ (the "Administrative Claims Bar Date").

Second, any professional fee claims for fees and expenses incurred on and after March 1, 2024

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Plan and Confirmation Order.

and prior to the Effective Date, must be filed with the Court and served on the undersigned no later than _____, 202___ (the "Professional Fee Claim Deadline").    Third, if rejection by the Debtors, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim must be filed with the Clerk of the Bankruptcy Court and served upon the undersigned on or before the later of (a) thirty (30) days after the date of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving such rejection and (b) thirty (30) days after the date an Executory Contract or Unexpired Lease is added to the Schedule of Rejected Executory Contracts or Unexpired Leases.

**PLEASE TAKE FURTHER NOTICE,** that neither the Plan or the Confirmation Order extend pre-existing bar dates or deadlines set by the Court for the filing of pre-petition Claims.

**Dated:** Roslyn, New York
_____, 202___

SPENCE LAW OFFICE, P.C.
Attorneys for the Debtors

By: _____*s/ Robert J. Spence*_____
Robert J. Spence, Esq.
55 Lumber Road, Ste 5
Roslyn, New York 11576
516-336-2060

EXHIBIT G

**Attorneys**          **LAW FIRM OF RUSSELL R. JOHNSON III, PLC**
**Russell R. Johnson III**          **2258 Wheatlands Drive**
**John M. Craig**          **Manakin-Sabot, Virginia 23103**
**Lindsay K. Biggs**          **Telephone (804) 749-8861**
          **Email: russell@russelljohnsonlawfirm.com**

Northern Virginia Office
John M. Craig
14890 Washington Street
First Floor
Haymarket, Virginia 20169
Telephone: (571) 261-5641
Email:  john@russelljohnsonlawfirm.com

November 26, 2025

<u>**Via Email**</u>

Robert J. Spence, Esq.
SPENCE LAW OFFICE, P.C.
55 Lumber Road, Suite 5
Roslyn, New York 11576
Email:  rspence@spencelawpc.com

*In re JVK Operations Limited, et al.*, Case No. 24-70799 REG
<u>**Settlement Offer Pursuant To Rule 408 Of The Federal Rules Of Evidence**</u>

Robert,

As you are aware from our prior communications, this firm represents KeySpan Energy Delivery Long Island d/b/a National Grid ("National Grid") regarding post-petition utility service matters.  Pursuant to the adequate assurance settlement letter dated April 8, 2024, the Debtors agreed to provide National Grid with the following form and amounts of adequate assurance of payment:  (i) $55,000 advance payment on or before April 8, 2024; (ii) $14,193 cash deposit on or before April 12, 2024; (iii) $14,192 cash deposit on or before May 12, 2024; and (iv) for the months of April 2024 forward while the Debtors remain in bankruptcy, the Debtors shall tender on or before the 22nd of each month, $55,000 payments to National Grid. Additionally, the Debtors agreed that if an acerated/advance payment is less than actual usage for the applicable billing period, National Grid would issue an invoice for the unpaid usage, with the Debtors paying such invoice by the applicable due date on the invoice.  Thereafter, in March 2025, the Debtors agreed to pay past-due post-petition charges owed to National Grid totaling $347,225.13 in twelve (12) installments of $28,935.43, beginning April 11, 2025, and to be paid on or before the 11th of each month thereafter (the "Payment Plan").

The Debtors acknowledge that they breached the foregoing adequate assurance agreement and Payment Plan with National Grid that has resulted in a current post-petition balance of $368,369.99 owed to National Grid on the large account for charges through November 7, 2025.  In an effort to avoid National Grid terminating post-petition utility service to the Debtors for non-payment of post-petition utility charges, the Debtors agree to the following:

A.      The Debtors shall tender a $50,000 to National Grid on or before December 1, 2025.

November 26, 2025
Page 2

B.      After receipt of the remaining $50,000 payment set forth in Section A. above, the post-petition balance owed by the Debtors shall be $318,369.99 (the "New Payment Plan Balance").

C.      The Debtors shall pay the new Payment Plan Balance as follows:

1.      $26,530.83 on or before January 1, 2026; and

2.      $26,530.83 on or before the 1st of each month thereafter until the New Payment Plan Balance is satisfied.

D.      In addition, the Debtors shall pay National Grid for all current utility charges on all subsequently issued invoices after the date of this letter agreement for post-petition invoices and post-effective date invoices on or before the applicable due date on the invoice, which is a due date in accordance with applicable state laws, regulations and/or tariffs. In addition, the Debtors shall pay the $2,674.10 invoice on Account No. 42215-62030 on or before the December 6, 2025 due date.

E.      The payments to be made by the Debtors to National Grid pursuant to Paragraphs A and C above should be sent to the following person and address:

> KeySpan Energy Delivery Long Island
> Attn:  Vicki Piazza, D-1
> National Grid
> 300 Erie Boulevard West
> Syracuse, NY 13202

F.      If the Debtors fail to timely make a payment required by this settlement letter agreement by the applicable due date, National Grid can terminate service to the Debtors after providing the Debtors and their counsel with written notice of the payment default and five (5) business days to cure the default (the "Cure Period"). If the Debtors cure the payment default within the Cure Period, National Grid cannot terminate service for the payment default. The notices required by this paragraph shall be sent via email to:

1.      Robert J. Spence, Esq.
        SPENCE LAW OFFICE, P.C.
        55 Lumber Road, Suite 5
        Roslyn, New York 11576
        Email:  rspence@spencelawpc.com

2.      A person designated by the Debtors, who shall be identified with contact information, including email address, in the correspondence returning an executed version of this Settlement Letter. If the Debtors fail to provide the foregoing contact person and information, notices shall be sufficient if sent to Debtors' counsel.

November 26, 2025
Page 3

G.    If the Debtors no longer require service at an account for any reason, including the Debtors' termination of services, a sale of the Debtors' assets, the Effective Date of the confirmed plan of reorganization in the Debtors' chapter 11 cases or dismissal of the Debtors' chapter 11 cases, the Debtors shall promptly contact National Grid to close the account(s).  Upon being contacted to close an account, National Grid shall promptly close the account(s) and promptly refund any credit, if any, on that account once all final post-petition charges for that account are satisfied.  If the Debtors fail to provide such notice, the Debtors shall remain administratively obligated to pay utility charges until National Grid receives such written notice of termination of services from the Debtors.

H.    The Debtors represent that all post-petition payments made to National Grid are authorized pursuant to the terms and conditions governing the Debtors' use of cash collateral or any budgets in connection with the foregoing.

I.    Upon execution of this letter agreement and payment of the amount set forth in paragraph A above, National Grid shall vote in favor of the Debtors' Plan.

J.    This settlement letter must be accepted via writing or email on or before November 28, 2025.

Please acknowledge the Debtors' agreement to the above-terms by signing this letter on the space set forth below and returning a signed copy to me via email.

Sincerely,

Russell R. Johnson III

SEEN AND AGREED:

Robert V. Spence, Esq.
SPENCE LAW OFFICE, P.C.
55 Lumber Road, Suite 5
Roslyn, New York 11576
*Debtors' Counsel*

EXHIBIT H

**Spence Law Office, P.C.**
Robert J. Spence, Esq. (RS3506)
Attorneys for the Debtors and
Debtors-in-Possession
55 Lumber Road, Suite 5
Roslyn, New York 11576
Tel.: (516) 336-2060

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
In re:                                                                      Chapter 11

JVK Operations Limited, et al.,                          Case No.: 24-70799 REG

                                        Debtors.[1]            (Jointly Administered)

-------------------------------------------------------------------- x

### NOTICE OF PROPOSED NON-MATERIAL AMENDMENTS TO MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

PLEASE TAKE NOTICE that, on October 31, 2025, JVK Operations Limited (the "Debtor") filed *The Debtor's Modified Third Amended Chapter 11 Plan Of Reorganization* (ECF Doc. No. 262) (including all exhibits thereto and as further amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[1] with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") pursuant to section 1129, of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

PLEASE TAKE FURTHER NOTICE that, the Debtor hereby submits this notice of proposed amendments to the Plan to correct inadvertent omissions and allow time for additional documents to be reviewed and submitted to the Court. The Debtor submits that the following proposed amendments are not material to the Plan nor are they the type of amendments that would require a re-solicitation of votes.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

1

## PROPOSED AMENDMENTS

1.  The Debtor intends to add the following new Class 9a secured claim[2] to the Plan at

Article III, Sec. C.9a.:

"9a.          **Class 9a — First Citizens Secured Claim**

(a)     *Classification*: Class 9a consists of the First Citizens Secured Claim ($112,789.27).

(b)     *Treatment:* Except to the extent that the Allowed First Citizens Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed First Citizens Secured Claim, the First Citizens Secured Claim shall be satisfied as follows:  Plan payments to First Citizens totaling the principal balance owed, without interest, shall be made by the Debtor for 72 consecutive months commencing on the Effective Date of the Plan with payments in the first 2 years of $1253/mo and for years 3-6, $1,723,27/mo). The respective loan documents between the Debtor and First Citizens, shall remain in effect subject to the modifications in the Plan.

(c)     *Retention of Liens.* The First Citizens Secured Claim shall retain their liens on pre-petition assets that secured their claim pending completion of payments under the Plan.

(d)     Forbearance against Guarantors. As to the Guarantors, so long as no default in Plan payments exists, and so long as this bankruptcy case is not dismissed or converted, First Citizens will not seek payment from the Guarantors and will release the Guarantors upon completion of all payments to First Citizens as described herein.

(e)     *Voting*: Class 9a is impaired.  Therefore, the Holder of the Allowed First Citizens Secured Claim is entitled to vote to accept or reject the Plan."

2.  The Debtor intends to add the following revised definition of "Plan Supplement" to the

Plan at Article I, Sec. A.77a.[3]:

---

[2] This Claim appears in the JVK-MediServ Settlement annexed to the Plan as Exhibit A. The Claim treatment was inadvertently omitted from the Plan itself.
[3] Due to a formatting error, the definition of "Plan Supplement" was grouped under A.77 with the definition of "Plan Implementation Transactions."

"77a. "**_Plan Supplement_**" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be Filed by the Debtor no later than seven (7) days before the Voting Deadline, or such other date as may be approved by the Bankruptcy Court, each of which documents, agreements, schedules and exhibits constitute, and are filed as part of, the Plan Supplement, including as any of such documents may be thereafter amended, supplemented, or modified from time to time in accordance with the terms hereof. the Plan Supplement shall include, without limitation, the following: (a) the Reorganized Debtor Governance Documents[4] _(which documents may be filed - in substantially the form they are expected to be executed - after the Confirmation Hearing but must be filed prior to entry of the Confirmation Order)_; (b) the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (d) Reorganization Notice; (e) a list of Retained Causes of Action; and (f) any and all other documentation necessary to effectuate the Reorganization or that is contemplated under the Plan. The Debtor shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with the terms of the Plan."

PLEASE TAKE FURTHER NOTICE, that, subject to the terms and conditions of the Plan, the Debtor reserves all rights to amend, revise, or supplement this Notice of Proposed Plan Amendments, at any time before the Effective Date of the Plan, or any such other date as may be provided by the Plan or by Order of the Bankruptcy Court.

Dated: Roslyn, New York
      December 8, 2025

Respectfully submitted,
SPENCE LAW OFFICE, P.C.
_Counsel to the Debtors_
By:      /s/ Robert J. Spence
        Robert J. Spence, Esq.
        55 Lumber Road, Suite 5
        Roslyn,  New  York  11576
        Tel.: (516) 336-2060

---

[4] The Reorganized Debtor Governance Documents have been circulated for review but are not ready to be submitted as an exhibit to the Plan Supplement.