## EXHIBIT B

**Engagement Letter**

SGR/82145611.8



jrmanning@silvrbirch.com

**PERSONAL AND CONFIDENTIAL**


December 28, 2024

Vinod Samuel, President
JVK Operations Limited,
JVK Operations Ltd. of NJ,
RMK Hospitality Services of NJ Corporation, &
RMK Hospitality Services, Inc.
130 New Highway
Amityville, NY 11701


Dear Mr. Samuel:

We are pleased to present this letter agreement ("Agreement") to confirm our understanding of the basis upon the engagement (the "Engagement") of Silver Birch Group, Inc., a Delaware corporation ("SBG"), and BA Securities, LLC, a Pennsylvania limited liability company ("BA"), by JVK Operations Limited ("JVK NY"), JVK Operations Ltd. of NJ ("JVK NJ"),  (collectively, JVK NY and JVK NJ are referred to herein as the "Debtors") and RMK Hospitality Services Of NJ Corporation ("RMK NJ"), and RMK Hospitality Services, Inc. ("RMK NY") (collectively, RMK NJ and RMK NY are referred to herein as the "RMK Entities")(collectively, the RMK Entities and Debtors are referred to as the "Clients"), with respect to the potential sale of Debtors' and RMK Entities' assets (a "Transaction").  SBG and BA are individually and collectively referred to and defined herein as "Advisor," "we," or "us."

The Debtors are operating as debtors-in-possession in chapter 11 under the U.S. Bankruptcy Code (the "Code") in the Eastern District of New York in Chapter 11 (administratively consolidated under Case No. 24-70799 REG), with the intent to pursue an expedited asset sale under §363 of the Code. Any security services provided under this Agreement will be conducted by Financial Industry Regulatory Authority ("FINRA") licensed personnel.

Jeffrey R. Manning, Sr. CTP will lead this engagement for the Advisor.[1]

In consideration of the mutual covenants and agreements herein contained, the parties hereto warrant and agree as follows:

---

[1] BA Securities, LLC is a FINRA/SEC registered Broker/Dealer, and, in addition to running SBG, Manning is a Registered Representative of BA.



jrmanning@silvrbirch.com

## Section 1 – Duties & Services

As the Clients' Advisor, we will, in coordination with the Clients, as required or requested:

i.    Review the Clients' business, markets, results of operations, financial condition and prospects;

ii.   Assist the Clients in establishing criteria for potential Qualified Bidders under §363 auction under the Code ("Bidders") identifying, screening and ranking prospective Bidders, and evaluating proposals and alternatives;

iii.  Prepare materials to solicit interest from potential Bidders.  Marketing materials (together, the "Documents") may describe the Clients' business, markets, management, results of operations, financial condition, prospects and competition;

iv.   Direct and coordinate the due diligence process, including, without limitation, the coordination of confidentiality agreements and access to a data room;

v.    Manage the marketing process by responding to initial due diligence questions, coordinating requests for additional information and potentially scheduling meetings between the Clients and potential Bidders;

vi.   Pursuant to Bankruptcy Court procedures, solicit indications of interest and assist the Clients in evaluating and comparing offers to acquire the Clients' assets;

vii.  Assist the Clients and its advisors through the closing process; and

viii. Advise the Clients, other professionals, and counsel on other matters that may arrive from time to time during the Engagement.

## Section 2 – Clients Actions & Understandings

In connection with this Agreement and the Engagement, the Clients:

i.    Agrees to provide Advisor with all information and material regarding the Clients as Advisor may reasonably request in connection with the performance of its obligations hereunder;

ii.   Agrees during the term of this Agreement not to initiate any discussions regarding a Transaction, except through Advisor.  In the event the Clients, its management, or its shareholders receive an inquiry concerning the availability of all or a portion of the assets of the Clients for purchase, they will promptly inform Advisor of such inquiry so that we can assess such inquiry and assist the Clients in any resulting negotiations;



iii.  Understands and agrees that in rendering its services hereunder, Advisor will be using and relying upon, without any independent investigation or verification thereof, all information furnished to Advisor by or on behalf of the Clients, and on publicly available information. Advisor will not be responsible for the accuracy or completeness of such information (included in the Documents or otherwise), and Advisor will not undertake to make an independent appraisal of the assets of the Clients;

iv.  Understands and agrees that in rendering its services hereunder, Advisor is not providing any accounting, legal or tax advice, and that Advisor will rely on other advisors to the Clients on these matters;

v.  Understands and agrees that SBG will not perform any services in connection with this Agreement that would require SBG to be registered as a FINRA/SEC registered Broker/Dealer. All such services will be performed exclusively by an associated person registered with BA;

vi.  Understands and agrees that Advisor shall use commercially reasonable efforts to facilitate the Transaction, but that this Agreement does not give rise to any express or implied assurance, commitment or guaranty of the closing of any Transaction;

vii.  Understands and agrees that Advisor is being retained to serve as the Advisor solely to the Clients, and that the engagement of Advisor is not, and shall not be deemed to be, on behalf of, and is not intended to confer rights or benefits upon, any shareholder or creditor of the Debtors or the RMK Entities or upon any other person or entity.  The Advisor is an Independent Contractor and has no Fiduciary Relationship with the Clients;

viii.  Understands that BA maintains important disclosures on its website at www.basecuritiesllc.com/disclosures. These disclosures, including BA's Privacy Policy, Business Continuity Plan and Customer Identification Plan, may be updated periodically on an as-needed basis.  The Clients agrees to accept and receive all of these disclosures by accessing BA's website electronically and acknowledges that hard copies are available by contacting BA at info@basecuritiesllc.com; and

ix.  Understands and agrees that in accordance with the requirements of the USA Patriot Act and Customer Due Diligence rules, that it is required to provide certain information to the Advisor, which information may include the name, address, DOB, SSN and copies of official government-issued identification of applicable Clients control persons and principal owner(s), as well as other information that will allow Advisor to properly identify its clients and investors.



jrmanning@silvrbirch.com

**Section 3 – Clients' Representations & Warranties**

In connection with this Agreement and the Engagement, the Clients represents and warrants to Advisor that:

i.   All information made available to Advisor by the Clients or contained in the Documents will, at all times during the period of this engagement, to the best of the Clients' actual knowledge after due investigation, be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made; and

ii.  Any projections provided to Advisor or contained in the Documents will have been prepared by the Clients in good faith and will be based upon reasonable assumptions derived from the best estimates and facts then available to the Clients.

**Section 4 – Fees and Expenses**

For the services rendered in connection with this Agreement, the Clients will pay to the Advisor all fees, compensation and reimbursement of expenses as follows:

i.   *Retainer*:  The Minimum Fee hereunder is $50,000.00 ("Minimum Fee")[2]. The Clients agree to pay the Advisor the Minimum Fee as follows: (i) $10,000, payable by RMK NJ, not the Debtors, in installment beginning with $2,000 upon execution of this Agreement and thereafter the balance in weekly payments of $2,000 on or before January 31, 2025, plus (ii) an additional $40,000 (the "Minimum Fee Balance") in the event no other Qualified Bidders (other than the entity disclosed to Advisor prior to execution hereof (the "Prospective Stalking Horse") are found during the Sale Process. All Fees and expense reimbursement are subject to Bankruptcy Court review and approval. The Minimum Fee Balance is payable at Closing on the Transaction if the Clients close with the Stalking Horse Buyer.  However, in the event the Prospective Stalking Horse transaction does not close, and the Debtors Plan is confirmed by the Court, the $40,000 will be payable, at the Clients' option, on the Effective Date of the Plan, or in 12 equal monthly installments commencing on the Effective Date.

ii.  *Debtor-in-Possession Financing Placement Fee*:  If asked in writing by the Debtors, the Advisor will seek DIP Financing support.  Subject to Court approval, the Advisor earns 3.5% of the DIP Commitment on DIP Financing that closes as a result of the Advisor's

---

[2] Clients reserve the right to charge the Minimum Fee to the Buyer as a Buyer's Premium.



introduction to the lender, to be paid as an Administrative Expense on or before Final Fee Applications.

iii. *Transaction Fee*:  If and when the Prospective Stalking Horse bid is approved as a Qualified Bid, SBG may earn a transaction fee ("Transaction Fee")[3] in the event the Prospective Stalking Horse bid is topped equal to 3.5% of the Total Consideration. The Total Consideration must be equal to or over $8,100,000 in order for the Transaction Fee to apply.  Any Transaction Fee is contingent upon the consummation/closing of a Transaction and takes the place of the Minimum Fee. The Clients receive a credit for any portion of the Minimum Fee paid against the Transaction Fee and any Minimum Fee Balance is cancelled.

iv. *Expenses*:  Subject to review and approval by the Bankruptcy Court, the Clients agree to reimburse Advisor for all reasonable out-of-pocket expenses incurred in connection with the services rendered hereunder during the term of this Agreement, including third party charges for outside data and costs for the online data room.

## Section 5 – Confidentiality

Advisor will not disclose to a third party any confidential information made available to it by, or on behalf of, the Clients and will use such confidential information only in connection with this Agreement; provided that such confidential information will not include any information: (i) already in Advisor's possession prior to the date the Clients disclosed it to Advisor; (ii) that becomes generally available to the public without violation of this paragraph by Advisor or its representatives; or (iii) that becomes available to Advisor on a non-confidential basis from a third party not bound by a confidentiality obligation to the Clients with respect to such information. Advisor is hereby expressly permitted by the Clients to disclose confidential information to third parties that have executed a Non-Disclosure agreement and may be potential Bidders in the Transaction contemplated herein.

The Clients acknowledges that all opinions and advice (written or oral) given by Advisor to the Clients in connection with this Agreement will be treated by the Clients as confidential, are intended solely for the use of the Board of Directors and senior management of the Clients in consideration of the Transaction and are not for the use of, and cannot be relied upon by, any other person or be used or relied upon for any other purpose.

---

[3] Clients reserve the right to charge the Transaction Fee to the Buyer as a Buyer's Premium.



jrmanning@silvrbirch.com

## Section 6 - Term and Termination

Advisor's engagement shall be on an exclusive basis for a period of twelve (12) months from the date of acceptance of this Agreement by the parties and may be renewed thereafter upon mutual consent of the parties hereto. Advisor's engagement hereunder may be terminated with or without cause by either the Clients or Advisor at any time upon thirty (30) days written notice delivered to the other party.

Notwithstanding any expiration or termination of this Agreement, the provisions of Sections 4 through 9 hereof shall survive any assignment, expiration or termination of this Agreement.

## Section 7 - Advertising

The Clients agrees that SBG, at its own expense, has the right to describe Advisor's services provided to the Clients as contemplated in this Agreement after the closing of a Transaction through (i) the issuance of a press release, (ii) the placement of advertisements in financial and other newspapers and journals, and (iii) by reference in its marketing materials, including SBG's website. Any such advertising is subject to the prior approval by the Clients, which approval shall not be unreasonably withheld.

## Section 8 – Other Provisions

i.   *Expansion of Scope*. In the event the Clients require other services that are materially beyond the Duties and Services listed above, then the Advisor reserves the right to request additional compensation on terms mutually agreed by the parties. Absent exigent circumstances, expansion of scope that requires compensation other than as set forth herein must be agreed upon in advance and approved by the Bankruptcy Court.

ii.  *Communications with Clients' Outside Counsel.* In the course of its engagement with the Clients, the Advisor will assist outside counsel in its representation in connection with rendering legal services. In such event, any and all communications between outside counsel to which Advisor is also a party as a necessary component of outside counsel's ability to render legal services (together the "Privileged Communications"), shall be regarded as privileged and confidential and made solely for the purpose of assisting counsel in rendering legal services. It is expressly understood that the Privileged Communications are deemed to be subject to, and protected by, the attorney-client, attorney work product and/or other applicable rights and/or privileges.



jrmanning@silvrbirch.com

iii.    *Transaction*.  For purposes of this Agreement, a "Transaction" shall mean and include, any asset purchase, merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which the Clients' assets are acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders).

iv.    *Consideration*.   For purposes of this agreement and for purposes of calculating a Transaction Fee, "Total Consideration," subject to good faith review, discussion and negotiation by Clients and Advisor, means the full transaction value of any Transaction, and is defined as the sum of (i) all cash, notes, stock, other securities and other property of any type paid by an Investor or acquirer for the Clients;  (ii) all debt, capitalized leases and similar obligations of the Clients assumed, repaid or retired by the investor or acquirer; (iii) retention payments and amounts paid pursuant to non-compete and severance agreements; and (iv) excess amounts paid for above-market employment and consulting agreements.  Notes, stock, other securities and other property will be valued at their cash or fair market value at the time of closing.  Installment payments and other unconditional fixed payments (such as lease, license and management agreement payments) will be discounted to present value at the current the Secured Overnight Finance Rate (SOFR) at closing, as quoted by the Bloomberg.com.  For the avoidance of doubt, the Total Consideration will not include any Break-Up Fee or expense reimbursement to the Stalking Horse Buyer or any Buyer's Premium for the Minimum Fee or Transaction Fee.

v.    *Indemnification*. Subject to review and approval of the Bankruptcy Court, Clients agrees to indemnify and hold harmless the Advisor from and against all claims, direct damages, losses and actual out-of-pocket reasonable expenses, including court costs and reasonable attorneys' fees (collectively, a "Claim") and, at Advisor's option, will defend Advisor against any Claim, due to Advisor's provision of services under the agreement other than Claims arising from the Advisor's own gross negligence, bad faith, or willful misconduct. Any amounts owed by the Clients hereunder shall be administrative expense claims under 11 U.S.C. § 503(b).

vi.    *Due Authorization*.  Each of the parties hereto represents and warrants, each to the other, that this Agreement has been duly authorized by its representative governing



jrmanning@silvrbirch.com

body and, if required by law or agreement, its shareholders, partners or members; and that this Agreement constitutes a valid and enforceable obligation of each of the parties in accordance with its terms. The Agreement was negotiated by sophisticated parties at arm's length.

vii.    *Governing Law*.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of laws and principals thereof, and, to the extent it involves any United States statute, with the laws of the United States.

viii.   *Dispute Resolution*.  Is subject to the U.S. Bankruptcy Court in the Eastern District of New York. The parties hereby waive any trial by jury and any dispute related to this Agreement any Transaction contemplated hereby, or any other matter contemplated hereby.

ix.     *Headings*.  The headings of the sections of this Agreement are used for convenience only and shall not affect the meaning or construction of the contents of this Agreement.

x.      *Filing of Retention Agreement*.  The Debtors, in order to approve the retention of the Advisor, shall apply promptly to the bankruptcy court having jurisdiction of the case (the "Bankruptcy Court") for approval pursuant to §§327(a) and 328(a) of the Code of the Advisor's retention by the Debtors under the terms of this agreement, subject only to the standard of review provided for in §328(a) of the Code, and not subject to the standard of review under §330 of the Code. The Debtors shall use their best efforts to obtain Bankruptcy Court authorization thereof.  The Debtors agree that, only subject to Bankruptcy Court approval, any allowed post-petition compensation set forth herein and payments made pursuant to the expense reimbursement and indemnification provisions of the Agreement shall be entitled to priority as expenses of administration under §§503(b)(1)(A) and 507(a)(2) of the Code. This Agreement is subject to Bankruptcy Court approval. If for any reason the Bankruptcy Court does not grant the retention application of the Advisor despite the Debtors' efforts, this Agreement shall be null and void and any sums paid hereunder shall be returned to the Clients and the Clients and Advisor shall have no further obligations hereunder.



xi.    **Section 9 - Notice**

All notices provided under this Agreement shall be in writing (including email) and shall be considered effective (a) when delivered personally or by email (without notice of delivery failure or delay) to the party for whom intended, or (b) five days following: deposit of the same into the U.S. mail, prepaid and return receipt requested; addressed to the party at the address set forth below:

If to Advisor:

        BA Securities LLC
        Four Tower Bridge, 200 Barr Harbor Drive, ste. 400
        W. Conshohocken, PA  19428
        Attn:        John Chuff, President
        E-mail:        jchuff@basecuritiesllc.com

        Silver Birch, Inc.
        1463a Grandview Road
        Arnold, MD  21012
        Attn:        Jeffrey R. Manning, Sr., Senior Managing Director
        E-mail:        jrmanning@silvrbirch.com

If to Debtors:

        Spence Law Office, P.C.
        55 Lumber Road, Ste. 5
        Roslyn, N.Y. 11576
        Attn:        Robert J. Spence, Esq.
        E-mail:        rspence@spencelawpc.com

If to RMK Entities:

        RMK Hospitality Services of NJ Corporation, &
        RMK Hospitality Services, Inc.
        130 New Highway
        Amityville, NY 11701
        Attn:        Vinod Samuel, President
        E-mail:        vsamuel@jvkoperations.com



jrmanning@silvrbirch.com

### Section 10 - Entire Agreement

This Agreement contains the entire understanding of the parties relating to the agreement set forth herein and transactions contemplated hereby, superseding all prior agreements, understandings and negotiations with respect thereto.  If any provision of this Agreement shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect or any other provision of this Agreement, which shall remain in full force and effect. This Agreement may be modified or amended only by a written instrument executed by the undersigned.

### Section 11 - Binding Effect; Assignment

This Agreement shall be binding upon the parties hereto and their respective heirs, administrators, successors, and assigns.  The engagement contemplated hereby and this Agreement is solely for the benefit of the Clients, Advisor and the Indemnified Parties, and their respective successors, permitted assigns and representatives, and no other person or entity shall acquire or have any right under or by virtue hereof.  This Agreement may not be assigned by either party without the prior written consent of the other party.

### Section 12 – Joint Representation.

Debtors and RMK Entities all share common ownership and interests regarding the purpose of this engagement, and the parties hereto are aware of no conflicts. To the extent a conflict arises at some time between the Debtors and RMK Entities, Advisor will represent only the Debtors and will cease representation of the RMK Entities.



jrmanning@silvrbirch.com

### *The Signature Page*

If the foregoing is acceptable to you, please so indicate by signing in the space provided and returning your signed copy to us. We look forward to working with you on this engagement and appreciate the opportunity to be of service.

Agreed to and accepted as of the date first above written:

**Silver Birch, Inc.**

By: _____

     Jeffrey R. Manning, Sr.

     Senior Managing Director

JVK Operations Limited &
JVK Operations Ltd. of NJ

By: _____

Samuel Vinod

President

**BA Securities, LLC**

By: *Dan Pickens*

Daniel N. Pickens
Principal

RMK Hospitality Services of NJ Corporation
and RMK Hospitality Services, Inc.

By: _____

Samuel Vinod
President